# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 05-391(EGS)** |
| | : | |
| **GUY BANKS,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT
## GUY BANKS'S MOTION FOR SEVERANCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes defendant Guy Banks's motion for severance. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

## Introduction

_____As a result of selling crack cocaine to an undercover police officer on six occasions, defendant Guy Banks along with his co-defendant Larry Woodard have been charged in an indictment with three counts of Unlawful Distribution of Cocaine Base and three counts of Unlawful Distribution of Five Grams or More of Cocaine Base. In addition, Woodard has also been charged with four counts of Unlawful Use of a Communication Facility for using the telephone to arrange the drug deals. Defendant Banks now moves to sever his trial from that of his co-defendant Woodard on the grounds that they have irreconcilable defenses. This Court should deny defendant Banks's motion because the defendants are properly joined under Rule 8 (b) and defendant Banks cannot show that the joinder in this case is so prejudicial as to necessitate severance.

## Factual Background

On March 25, 2004, a Metropolitan Police Department ("MPD") confidential source ("CS")

contacted defendant Larry Woodard and arranged to meet him later that same day to purchase some crack cocaine. At approximately 6 p.m., the CS accompanied by undercover MPD officer, Vernon Young, met Woodard at Kansas Avenue and Longfellow Street, Northwest, Washington, D.C. Woodard informed the CS and the undercover officer that his source was "on the way" and asked the men how much product they wanted to purchased. The undercover officer stated that he wanted 20 ziplocks of crack cocaine and handed Woodard $150 in pre-recorded funds. Shortly thereafter, defendant Guy Banks arrived. Woodard walked over to Banks' car and had brief conversation with him, during which the men appeared to exchange something. Woodard then returned to the undercover officer's car and provided the officer with 27 yellow ziplocks, each containing crack cocaine.[1] The officer handed Woodard an additional $20 for his services. Banks and Woodard left the area, each going their separate ways.

On March 30, 2006, the CS again contacted Woodard by telephone to arrange another meeting. At approximately 6 p.m., the CS and the undercover officer met with Woodard at Kansas Avenue and Longfellow Street, Northwest. This time, the undercover officer asked for 50 ziplocks of crack cocaine. Woodard indicated that Banks would only have around 30 ziplocks of product. The officer assured Woodard that he would purchase whatever Banks had and then Woodard called Banks. Woodard informed the officer that the price was $200 and the officer handed Woodard $200 in pre-recorded funds. In minutes, Banks drove into the block and parked behind the officer's car. Woodard got into Banks's car. Woodard then exited Banks' car and returned to the officer's car a

---

[1]    This substance was later analyzed be the Drug Enforcement Administration ("DEA") and determined to be 1.5 grams of cocaine base.

short time later.  He handed the officer 37 ziplock bags containing crack cocaine.[2]  The officer handed Woodard $40 for his services. Each defendant then departed.

On April 6, 2004, Woodard contacted the CS to arrange a sale for later that day.  At approximately 6:40 p.m., the CS and the officer met with Woodard at Kansas Avenue and Longfellow Street, Northwest.  The officer stated that he wanted 50 ziplocks.  Woodard replied that the price was $300.  The undercover officer handed Woodard $300 in pre-recorded bills.  Woodard walked away and entered Banks's car, which was parked across the street.  Shortly thereafter, Woodard returned to the officer's car and handed him a white piece of paper in which there was 50 ziplocks of crack cocaine.[3]  The officer handed Woodard $40 for his assistance.

On April 13, 2004, Woodard contacted the CS to schedule yet another sale of drugs.  At approximately 5:45 p.m., the undercover officer and the CS met with Woodard in the 200 block of Longfellow Street, Northwest.  The undercover officer indicated that he wanted to buy 100 ziplocks of crack cocaine.  Woodard replied that the price was $550.  The undercover officer handed Woodard $550 in pre-recorded funds.  Woodard walked over to the car Banks was driving. Moments later, Woodard returned to the officer's car and handed him 100 ziplocks of crack cocaine.[4] The undercover officer provided Woodard with $70 for his services.

On April 21, 2004, the CS and Woodard agreed to meet to do another deal, but this time for 250 ziplocks of crack cocaine.  Shortly after 6 p.m. on that day, the CS and undercover officer met

---

[2]       This substance was analyzed and determined to be 2.4 grams of cocaine base.

[3]       The crack cocaine was analyzed by the DEA and determined to weigh of 3.5 grams.

[4]       The crack cocaine was analyzed by the DEA and determined to weigh 6.5 grams.

Woodard at Kansas Avenue and Longfellow Street, Northwest. Woodard indicated that Banks would meet them shortly. Minutes later, Banks arrived and Woodard agreed to introduce the undercover officer to Banks. The undercover officer and Woodard got into Banks' car. Banks drove around the corner. Woodard indicated that the price was $1,100 for the product. The undercover officer handed the pre-recorded funds to Woodard. Banks then handed the undercover officer 201 ziplocks of crack cocaine.[5] Woodard gave Banks the pre-recorded funds he received from the undercover officer. Banks drove back to the original buy location and the undercover officer returned to his own car. Woodard then walked over to the undercover officer's car and handed the officer a piece of paper with Banks's first name and phone number on it. The undercover officer gave Woodard $60 for his services.

On May 20, 2004, Woodard and the CS spoke to set up another deal. At approximately 6 p.m., the undercover officer and the CS met with Woodard in the 200 block of Longfellow Street, Northwest. The undercover indicated that he wanted more than 250 ziplocks of crack cocaine. Woodard called Banks. Woodard then stated that they were to meet Banks at Third and Jefferson Streets, Northwest. Upon arriving at the new location, the undercover officer got into the back seat of the car that Banks was driving. Banks indicated that he had 140 ziplocks of crack cocaine as well as some loose rocks and that the price was $1,200. The officer handed Banks that amount in pre-recorded funds. Banks handed the undercover an officer a sandwich bag containing smaller ziplock bags of crack cocaine.[6] The undercover officer then returned to his car, where he provided Woodard with $30.

---

[5]    The crack cocaine was analyzed by the DEA and determined to weigh 13.9 grams.

[6]    The crack cocaine was analyzed by the DEA and determined to weigh 14.6 grams.

## ARGUMENT

Defendant Banks now asks this Court to sever his trial from that of his co-defendant  Larry Woodard on the grounds that they have irreconcilable defenses.  The Court should reject this request because, as defendant Banks implicitly concedes,  joinder was proper in this case and in any event, Banks cannot show that the joinder in this case is so prejudicial as to necessitate severance.

Joinder of counts and defendant is designed to promote judicial economy and efficiency by avoiding multiple trials, and there is a strong preference for joint trials in the federal system where that can be accomplished without "substantial prejudice" to a specific trial right of the defendant. Zafiro v. United States, 506 U.S. 534, 540 (1993) (citation omitted).  In making a severance determination, one of the main factors a court should consider is the judicial's system's strong and legitimate interest in efficient and expeditious proceedings.  United States v. Long, 905 F.2d 1572, 1580 (D.C. Cir.), cert. denied, 499 U.S. 948 (1998).  Other salient factors, which militate against severance, include: (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct.  See United States v. Manner, 887 F.2d 317, 325 (1989).

In a co-defendant case, Fed. R. Crim. 8(b) controls joinder of both offenses and defendants. United States v. Perry, 731 F.2d 985, 989 (D.C. Cir. 1984).  This Circuit construes Rule 8()b broadly in favor of joinder.  United States v. Gibbs, 904 F.2d 52, 56 (D.C. 1990) ("[T]his court ... has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal case load in our criminal courts.").  Under Rule 8(b), "[t]wo or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." United States v. Manner, 887 F.2d at 324.  See also United States v. Brooks, 567 F.2d 134, 138 (D.C. Cir. 1977).  A defendant's

culpability under fewer than all the counts in the indictment does not affect the propriety of the joinder under Rule 8(b). Each defendant need not be charged in each count and need not have participated in every transaction. It is sufficient that each defendant participated in one act or transaction in the series. Fed. R. Crim. P. 8(b); United States v. Harrelson, 754 F.2d 1153, 1176 (D.C. cir. 1985).

Rule 8(b) encompasses the transactions and defendants involved in this case. The indictment satisfies the standards of Rule 8(b) because the offenses arise out of the same incidents and the government will present the same evidence through the testimony of the same witnesses about the same illegal conduct. In not addressing the applicability of Rule 8(b), defense counsel implicitly acknowledges the propriety of joinder in this case.

Fed. R. Crim. P. 14 permits the trial court to grant a severance of properly joined defendants if it appears that a defendant will be prejudiced by joinder. The decision to sever falls with the discretion of the trial court, and the balance is to be struck in favor of joint trials. United States v Manner, 887 F.2d 324. Rule 14 even countenances some prejudice to a defendant from a joint trial: Severance is not required simply because a defendant might have a better chance of acquittal if tried separately. United States v. Halliman, 923 F.2d at 884. See also United States v. Wright, 783 F.2d 1091, 1095 (D.C. Cir. 1986).

Indeed, Fed. R. Crim. P. 14 does not require severance as a matter of law even where co-defendants present "mutually exclusive defenses." Zafiro v. United States, 506 U.S. 534 (1993). A defendant has the burden of showing that a conflict is so prejudicial that differences are irreconcilable and that the jury will unjustifiably infer that the conflict alone shows that all co-defendants are guilty. See Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966). See also

-6-

United States v. Caldwell, 543 F.2d 1333 (D.C. Cir. 1974), cert. denied, 423 U.S. 1087 (1976).

Therefore, the defendant must show more than mere hostility among the co-defendants. See, e.g.,

United States v. Leonard, 494 F.2d 955, 966-67 (D.C. Cir. 1974) (severance is not required

where independent evidence of each defendant's guilt supports the jury's verdict).  Here,

defendant Banks cannot satisfy his burden.  First, Banks has not even articulated his defense or

the defense of his co-defendant.  Moreover, even assuming that Banks's defense is that he never

provided drugs to anyone while Woodard's defense is that he was an undercover courier

transporting drugs from Banks to the police, these defenses, without more, do not evidence

prejudicial joinder.

        The case of  Zafiro v. United States, 506 U.S. 534 (1993), is instructive on the issue of

prejudicial joinder.  In Zafiro, four co-defendants were accused of participating in a drug

conspiracy.  Salvador Garcia and Alfonso Soto were arrested after officers saw the two place a

large box, which contained cocaine, in Soto's car and drive from Soto's home to the home of a

third co-defendant, Gloria Zafiro.  Zafiro, 506 U.S. at 535.  Soto and Garcia carried the box up

the stairs, but dropped the box and ran into Zafiro's apartment, when officers approached them

and identified themselves.  Id. at 535-536.   The officers later found Soto, Garcia, Zafiro and

Zafiro's boyfriend, Jose Martinez, in Zafiro's apartment. Id. at 536.  The officers also found a

suitcase containing cocaine, heroin and marijuana inside a suitcase in a closet.  Id.  All four

defendants moved for severance.  Soto and Garcia argued that their defenses were mutually

antagonistic because Soto claimed he was ignorant of the contents of the box while Garcia

claimed that it was Soto's box of contraband.  Id.   Zafiro and Martinez also claimed to have

mutually antagonistic defenses because Zafiro testified that she knew nothing about the drugs

found in her home and that the suitcase found there belonged to her boyfriend Martinez. Martinez claimed he was only visiting Zafiro and knew nothing about her drug activity. Id.

The Supreme Court upheld the trial court's decision to deny severance. Zafiro, 506 U.S. at 541. First, the defendants argued that the nature of the defenses prejudiced them because each was pointing the finger at the other. Id. at 540. Specifically, two of the co-defendants (Soto and Zafiro) testified and claimed that the other two co-defendants were the culpable parties. Id. at 536. However, the Court rejected this contention. The Court noted that "a fair trial does not include the right to exclude relevant and competent evidence." Id. at 540. In Zafiro, the Court found that, regardless of whether the trials had been severed or not, the testimony of the co-defendants would have been relevant and competent and thus admissible at the trial of their non-testifying co-defendants. Id. Accordingly, the Court found that such testimony did not constitute prejudice mandating severance. Id.

In this case, if Woodard claims that he was working undercover for the police when he was transporting drugs from Banks to the police, Woodard will have to testify to that effect. Although Woodard's testimony may undermine defendant Banks's claim of innocence, such testimony does not constitute the kind of prejudice that mandates severance under Zafiro.

In Zafiro, the defendants also argued that severance was necessary because if each defendant claimed innocence and accused each other of the crime the jury would conclude that either (1) all of the defendants were lying and convict them on that basis or (2) at least two of the four must be guilty without regard to the government's burden of proof. Id. at 540. The Court rejected this argument, finding that the government had established each defendant's guilt with sufficient evidence. Id. Further, the Court noted that even if there was some risk of prejudice, it

was the type which could be cured by proper jury instructions.  Id. at 541.

Similarly, in this case, the government has sufficient evidence to prove each defendant guilty of the counts with which each is charged.   The government's evidence is as follows: Before each buy, Woodard contacted the CS and set up the time the deal would take place.  On many of the transactions Woodard did the negotiations, took the pre-recorded money, and then walked over to Banks and had some discussion, before returning to the officer with the product. On two occasions, Woodard set up the deal, but the undercover officer actually got into Banks' car and was given the drugs by Banks himself.  Accordingly, the government has sufficient evidence to establish the guilt of both defendants beyond a reasonable and thus there is no prejudicial joinder.  And moreover, whatever slight risk of prejudice that may occur as the result of both defendants being tried together can be alleviated by appropriate instructions to the jury.

## CONCLUSION

WHEREFORE, for the reasons stated above, the United States respectfully submits that defendant Banks's motion to sever should be DENIED.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Denise M. Clark
Assistant United States Attorney
Federal Major Crimes Section, Bar No. 479149
555 4th Street, N.W.  #4840
Washington, DC 20530
(202) 353-8213; Fax: 353-9414