UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.  05-391-01 (EGS)** |
| | : | |
| v. | : | |
| | : | |
| **GUY BANKS,** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and in compliance with the Court's order of February 21, 2007, hereby submits this memorandum in aid of sentencing, specifically addressing the affect of the recent decision in United States v. Pickett, 475 F.3d 1347 (D.C. Cir. Feb. 12, 2007).

*Background*

*The Defendant's Criminal Conduct*

On March 10, 2004, the defendant's co-defendant, Larry Savy Woodard, contacted the defendant and arranged for the defendant to sell crack cocaine to a cooperating source and an undercover Metropolitan Police Officer. In the late afternoon of that day, the source and the undercover officer, along with co-defendant Woodard, met the defendant in the 3700 block of New Hampshire Avenue NW in Washington, DC. There, the source and the undercover officer gave Woodard $120.00 in pre-recorded currency. In exchange, Woodard approached the defendant and exchanged the money for 19 ziploc bags of crack cocaine. Woodard returned and handed the cocaine to the undercover officer. The net weight of the crack cocaine was later determined to be 1.5 grams.

On six other occasions, from March 25, through May 20, 2004, this scenario was repeated. That is, through the facilitation of co-defendant Larry Woodard, the defendant sold crack cocaine to the confidential source and the undercover officer.

On March 25, 2004, the defendant met co-defendant Woodard, the confidential source and the undercover officer near the intersection of Longfellow Street and Kansas Avenue NW. Through the facilitation of Woodard, the defendant sold 27 ziploc bags of crack cocaine to the undercover officer for $150.00. The net weight of the crack cocaine was later determined to be 1.5 grams.

On March 30, 2004, the defendant again met Woodard, the confidential source and the undercover officer at the same location. Through the facilitation of Woodard, the defendant sold 37 ziploc bags of crack cocaine to the undercover officer for $200.00. The net weight of the crack cocaine was later determined to be 2.4 grams.

On April 6, 2004, the defendant again met Woodard, the confidential source and the undercover officer at the same location. Through the facilitation of Woodard, the defendant sold 50 ziploc bags of crack cocaine to the undercover officer for $300.00. The net weight of the crack cocaine was later determined to be 3.5 grams.

On April 13, 2004, the defendant again met Woodard, the confidential source and the undercover officer at the same location. Through the facilitation of Woodard, the defendant sold 100 ziploc bags of crack cocaine to the undercover officer for $550.00. The net weight of the crack cocaine was later determined to be 6.5 grams.

On April 21, 2004, the defendant met Woodard, the confidential source and the undercover officer at the same location. On this occasion, the undercover officer entered the car that the defendant was driving and the defendant drove the officer around the block. During the trip, the

defendant sold the undercover officer 201 ziploc bags of crack cocaine for $1100.00. The net weight of the crack cocaine was later determined to be 13.9 grams.

On May 20, 2004, the defendant met Woodard, the confidential source and the undercover officer near the intersection of Third and Jefferson Streets NW. The undercover officer entered the car that the defendant was driving and the defendant sold 140 ziploc bags of crack cocaine to the officer for $1200.00. The net weight of the crack cocaine was later determined to be 14.6 grams.

*Procedural Background and Plea Agreement*

The defendant was charged, along with co-defendant Larry Savy Woodard, in a ten count indictment. Specifically, the defendant was charged with three counts of Unlawful Distribution of Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and three counts of Distribution of 5 Grams or More of Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).

On November 9, 2006, the defendant entered a guilty plea to one count of Distribution of 5 Grams or More of Cocaine Base and Aiding and Abetting. The defendant's guilty plea was entered pursuant to a written agreement with the government. In that agreement, the defendant accepted responsibility for relevant criminal conduct that involved his distribution of 42.8 grams of crack cocaine. In the agreement, the government agreed that the defendant's base offense level should be decreased by 3 levels for acceptance of responsibility. The government also agreed not to oppose a further 2 level reduction of the defendant's base offense level if the defendant was found to meet the criteria set out in USSG §5C1.2(a)(1) through (5).

The defendant's offense level for this offense is 30. Due to his acceptance of responsibility

for the offense, the defendant is entitled to a 3 point downward departure. Moreover, the defendant was found to meet the criteria set out in USSG §5C1.2(a)(1) through (5), and he is thus entitled to a further 2 point downward departure. Therefore, the defendant's total offense level is 25. The defendant's criminal history places him in a criminal history category of I. Accordingly, the defendant's guidelines range for the offense calls for a period of incarceration from 57 to 71 months' incarceration.

When the case was called for sentencing on February 21, 2007, the Court continued the sentencing until May 30, 2007, and invited the parties to submit sentencing memoranda specifically addressing the effect, if any, of our Court of Appeals' recent decision in United States v. Pickett, 475 F.3d 1347 (D.C. Cir. Feb. 13, 2007).

*The Pickett Decision*

Lorenzo Pickett, after pleading guilty to distributing more than 5 grams of crack cocaine, in violation of 21 U.S.C. § 841, was sentenced to 121 months, the low end of the applicable range of imprisonment established by the Sentencing Guidelines. United States v. Pickett, 475 F.3d at 1348. While not disputing that the guideline range of imprisonment was 121 to 151 months, Pickett had argued for a sentence below the range, in order to "take into account the unwarranted disparity between Guideline sentences based on the weight of crack as opposed to powder cocaine." Id. at 1348. The sentencing judge declined to consider the issue, and Pickett appealed. Id.

In its discussion of the issue, the Court of Appeals noted that since their inception in 1987, the Sentencing Guidelines have set a 100 to 1 ratio with respect to determining sentences for powder cocaine and crack cocaine offenses. Id. at 1350. That ratio requires, for example, that a defendant

convicted of distributing 50 grams of crack cocaine be treated under the Guidelines the same as a defendant convicted of distributing 5000 grams of powder cocaine. Id. In the period before United States v. Booker, 543 U.S. 220 (2005), when the Guidelines were mandatory, a court considering the sentence to be imposed for a crack cocaine violator, could not depart downward from the applicable Guideline range based on the disparity. Pickett, 475 F.3d at 1351. After Booker, the Guideline range became only one factor out of several for a court to consider when imposing a sentence. Id. at 1351-52.

As the Pickett court held, 18 U.S.C. § 3553(a) sets out the factors that a sentencing court must consider in imposing sentence. Id. at 1352. They are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

> (5) any pertinent policy statement issued by the Sentencing Commission . . . [;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court noted that neither the Supreme Court nor the statute has assigned any weight or ranking to these factors, and it was therefore unclear how much influence the Guideline range should have when sentencing a defendant. Pickett, 475 F.3d at 1353. The court held, however, that it would not be proper for a sentencing judge simply to presume that a Guidelines sentence is the correct sentence. Id.

Instead, a sentencing judge should "evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." Id. The purposes of sentencing, the court suggested, are contained within 18 U.S.C. § 3553(a), specifically at § 3553(a)(2). Id. at 1352 n.4; see also 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection.") (emphasis added).

The Pickett court then discussed how in the last twelve years the Sentencing Commission, with respect to the application of USSG § 2D1.1 in crack cocaine cases, has been "one of its severest critics." Pickett, 475 F.3d at 1353. After quoting from the Commission's 2002 report to Congress on cocaine sentencing policy, the court concluded that the Sentencing Commission itself believes that this Guideline, at least with respect to crack distributors, "generates sentences that are greater

than necessary, exaggerates the seriousness of the offense of crack trafficking, does not promote respect for the law and does not provide just punishment." Id. at 1354.  The court then concluded that Pickett's sentencing judge had erred "in refusing to evaluate whether sentencing Pickett in accordance with Guideline § 2D1.1, and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in § 3553(a)." Id. (internal quotation marks omitted).

### *Application of the Pickett Decision*

Pickett thus requires a sentencing judge to consider whether USSG § 2D1.1's disparate treatment of crack cocaine and powder cocaine offenders effectuates the purposes of sentencing enumerated in 18 U.S.C. 3553(a)(2).  Significantly, notwithstanding Pickett's conclusion that the Commission believes the guideline to be inconsistent with the sentencing statute, the court of appeals did not hold that the guideline itself was issued in violation of the Sentencing Commission's enabling statute, 28 U.S.C. §§ 991-998, a key provision of which requires the Commission to establish sentencing policies and practices that "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, U.S. Code." Id., 28 U.S.C. § 991(b)(1)(A); see also Id., 28 U.S.C. § 994(g) ("The Commission, in promulgating guidelines . . . to meet the purposes of sentencing set forth in section 3553(a)(2) of title 18, United States Code . . . .").

Accordingly, it is not the case that in all circumstances a sentence for a crack cocaine violation consistent with § 2D1.1 will fail to effectuate the purposes of the sentencing statute.  And in this particular case, involving defendant Banks, a sentence consistent with § 2D1.1 does effectuate the purposes of the statute, in particular the purposes of having a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and

protect the public from further crimes by the defendant. A mitigated sentence, such as one based on a 20 to 1 ratio as suggested by the defendant, see Defendant's Memorandum of Law in Aid of Sentencing, Doc. 46 at p. 5 - 6, fails to adequately address the goals of § 3553(a).

By qualifying for an additional two level departure pursuant to USSG § 5C1.2(a)(1) through (5), the defendant has already benefitted substantially from a reduced sentencing calculation. Moreover, by qualifying for the "safety valve" provision, the defendant also escapes the otherwise mandatory 5 year minimum sentence required by 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) for offenses involving 5 grams or more of crack cocaine. Indeed, with a offense level of 25 and a criminal history category of I, the bottom of the defendant's guideline range, 57 months, allows the Court to effectuate the benefit of the safety valve by imposing a sentence under 5 years.

The amount of drugs reflected in the defendant's relevant conduct, 42.8 grams, is significantly higher than that contemplated by the five year mandatory minimum in § 841(b)(1)(B)(iii). The amount of crack cocaine that the defendant sold is far closer to that which triggers the 10 year mandatory minimum sentence contemplated for offenses involving 50 grams or more of crack cocaine. By having his offense level decreased, the defendant has already benefitted significantly.

When viewed in the context of the appropriate penalties for crack cocaine offenses contemplated by Congress in enacting 21 U.S.C. § 841, that is, 5 and 10 year mandatory minimum sentences for 5 grams and 50 grams of crack cocaine respectively, a sentence of 57 months' incarceration correctly addresses the factors to be considered pursuant to § 3553(a). While being permitted to benefit from the safety valve provision, the defendant's sentence should also reflect the seriousness of his offense, serve as a deterrent to the defendant and adequately protect the public

from further crimes of the defendant. Moreover, a guideline sentence would also avoid an unwarranted disparity between the defendant and other offenders who have been found guilty of similar conduct involving similar amounts of crack cocaine.

*Recommendation*

In accordance with the terms of the plea agreement, the government respectfully recommends that the Court impose a sentence of 57 months' incarceration, followed by term of supervised release of three years.

**WHEREFORE**, the United States respectfully moves that the Court to impose a sentence of 57 months' incarceration followed by three years of supervised release.

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NO. 489-610

BY:        /S/
EDWARD A. O'CONNELL
Assistant United States Attorney
555 Fourth Street NW
Room 4122
Washington, DC 20530
(202) 514-6997
(Fax) (202) 514-8707
Edward.O'Connell@usdoj.gov